UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEGRA HOLDINGS, LLC and
ALLEGRA NETWORK, LLC,

        Plaintiffs,                          No. 13-CV-13498

vs.                                            Hon. Gerald E. Rosen

LAWRENCE DAVIS, JOAN BAHR
DAVIS, and FOX TRACKS, INC.,

        Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR CHANGE OF VENUE

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on April 24, 2014

PRESENT: Honorable Gerald E. Rosen
United States District Chief Judge

I.  INTRODUCTION

    This matter is presently before the Court on the Motion for Change of Venue filed by Defendants Fox Tracks, Inc., a Minnesota corporation, and its owners, Lawrence and Joan Bahr Davis. Plaintiffs Allegra Network, LLC and Allegra Holdings, LLC (collectively referred to herein as "Allegra") have responded and oppose Defendants' Motion. Having reviewed the parties' briefs, the accompanying exhibits, and the record as a whole, the Court finds that the pertinent facts and legal contentions are sufficiently

presented in these materials, and that oral argument would not assist in the resolution of this matter. Accordingly, the Court will decide this matter "on the briefs." *See* Eastern District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

This case arises out of the Defendants' alleged violation of a non-compete covenant contained in a franchise agreement entered into by Allegra Network, LLC, as franchisor, and Fox Tracks, Inc. ("Fox"), as franchisee. The Allegra plaintiffs are Michigan limited liability companies with their principal places of business in Plymouth, Michigan. Defendant Fox is a Minnesota corporation with its principal place of business in Burnsville, Minnesota. Defendants Lawrence and Joan Davis, the owners of Fox, are citizens of the State of Minnesota.

On April 8, 2003, Allegra Network entered into a written franchise agreement with Fox (the "Franchise Agreement") pursuant to which Fox would operate an Allegra Print and Imaging Center in Burnsville, Minnesota. Lawrence and Joan Davis executed a Guarantee and Assumption of Obligations Agreement (the "Guarantee") at the same time, guaranteeing Fox's obligations under the Franchise Agreement.

In order to induce Allegra to grant them a franchise, Defendants specifically agreed, among other things, that, for a two-year period following termination of the Franchise Agreement, they would not engage in the same or similar business within ten

miles of the franchised location, or within five miles of any other Allegra-franchised location. Defendants also agreed that upon termination of the Franchise Agreement, it would immediately cease using the Allegra marks, return all manuals and training materials, and assign to Allegra all telephone numbers used in connection with the operation of their Allegra center.

The Franchise Agreement expired on June 13, 2013. After the termination of the Agreement, however, Defendants continued to operate an allegedly competing business at the formerly-franchised location, in violation of their post-termination obligations under the Franchise Agreement. According to Plaintiffs, in operating this competing business, Defendants used Plaintiffs' customer lists and confidential information, and advertised and held themselves out as an Allegra business. Defendants also failed to transfer the telephone number of their formerly-franchised business to Allegra as required under the Franchise Agreement.

On August 14, 2013, Plaintiffs filed a four-count Complaint against Defendants in this Court seeking injunctive relief and damages, under theories of trademark infringement (Count I), unfair competition (Count II), breach of the Franchise Agreement (Count III) and breach of the Guarantee Agreement (Count IV). On October 22, 2013, Defendants responded by way of the instant Motion for Change of Venue, seeking a change of venue to the District Court for the District of Minnesota. Defendants argue that the Franchise Agreement and the Minnesota Franchise Act (the "MFA") require that

Allegra litigate its claims against them only within the State of Minnesota.

### III.  DISCUSSION

A.     APPLICABLE STANDARDS

As an initial matter, the Court notes that, although Defendants ostensibly brought this motion pursuant to Fed. R. Civ. P. 12(b)(3),[1] the Supreme Court's recent decision in *Atlantic Marine Const. Co., Inc. v. U.S. District Court for the Western District of Texas*, ___ U.S. ___, 134 S. Ct. 568 (2013), requires that a motion for a change of venue based on the terms of a contractual forum selection clause must be treated as a motion to transfer venue under 28 U.S.C. § 1404(a) rather than as a motion to dismiss under Rule 12(b)(3), and decided accordingly.

As the Court noted in *Atlantic Marine*, in the typical case not involving a forum selection clause, a district court considering a § 1404(a) motion would "weigh the relevant factors and decide whether, on balance a transfer would serve 'the convenience of parties and witnesses" and otherwise promote "the interests of justice." 134 S.Ct. at 581 (quoting 28 U.S.C. § 1404(a)).  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause which 'represents the parties' agreement as to the most proper forum.'"  *Id.* (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 108 S.Ct. 2239 (1988)).  "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers

---

[1] Fed. R. Civ. P. 12(b)(3) provides that a party may assert certain defenses, including the defense of "improper venue," by motion. *Id.*

vital interests of the justice system." *Id.*

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interests of justice" is served by holding parties to their bargain.

*Id.* at 583.

With these principles in mind, the Court's analysis turns to ascertaining whether the parties here bargained for a Michigan or a Minnesota forum when entering into the Franchise Agreement.

B.   THE FORUM SELECTION CLAUSE IN THE PARTIES' AGREEMENT

In this case, the forum selection clause at issue is contained in Section 7 of the Rider to the Franchise Agreement.[2] This Section provides:

> Subject to the parties' obligations under Section 32 [providing for binding arbitration of certain disputes], you and your Owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us must be commenced in the state or federal court of general jurisdiction in or nearest to Troy, Michigan. You and your Owners irrevocably submit to the jurisdiction of those courts and waive any objection or venue in those courts. Notwithstanding the foregoing, Minn.

---

[2] This Rider was expressly annexed to and executed as part of the Franchise Agreement "because (a) the Allegra Print & Imaging Center. . . that you will operate under the Franchise Agreement will be located in Minnesota; and/or (b) any of the offering or sales activity relating to the Franchise Agreement occurred in Minnesota." [Rider, § 1].

5

> Stat. Sec. 80C.21 and Minn. Rule 2860.4400J prohibit Franchisor, except in certain specified cases, from requiring litigation to be conducted outside Minnesota. Nothing in this Agreement shall abrogate or reduce any of your rights under Minnesota Statutes Chapter 80C or your right to any procedure, forum or remedies that the laws of the jurisdiction provide.

Complaint, Ex. 1, Dkt. # 1-1, Pg. ID 63.[3]

Notwithstanding Defendants' stated consent to this Court's venue (i.e., the "federal court of general jurisdiction nearest to Troy, Michigan"), Defendants maintain that Plaintiffs' filing suit in this Court is tantamount to "requiring litigation to be conducted outside Minnesota," thus violating the second part of Section 7 as well as Minnesota law, specifically Section 80C.21 of the Minnesota Franchise Act and Minnesota Rule 2860.4400(J).

First, there is nothing in the contractual language limiting *Defendants'* selection of a Minnesota court as a forum *should they, as Franchisors, choose* to file suit. *See Ramada Worldwide, Incl. v. Grand Rios Investments, LLC*, 2013 WL 5773085 at * 3 (D.N.J. Oct. 23, 2013) (construing a substantially similar Minnesota franchise agreement

---

[3] Section 7 of the Rider specifically replaced Section 33.2 of the Franchise Agreement, which read only:

> Subject to the parties' obligations under Section 32, you and your Owners agree that all actions arising under this Agreement or otherwise as a result of the relationship between you and us must be commenced in the state or federal court of general jurisdiction in or nearest to Troy, Michigan. You and your Owners irrevocably submit to the jurisdiction of those courts and waive any objection or venue in those courts.

*See* Complaint, Ex. 1, Dkt. # 1-1, Pg ID 49.

provision in denying defendant's motion for change of venue and finding that "[t]he Franchise Agreement does not contain any language indicating that Grand Rios or the other defendants waived any right to file suit in Minnesota." *Id.*)

Second, there is nothing in the contractual language or in the referenced Minnesota statutes or rule precluding parties to a franchise agreement from agreeing to a forum selection.

> Section 80C.21 of the Minnesota Franchise Act states:
>
> Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of this state, or, in the case of a partnership or corporation, organized or incorporated under the laws of this state, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

Minn. Stat. § 80C.21.

Defendants contend that the "anti-waiver" language in § 80C.21 precludes a franchisor from having to litigate in a non-Minnesota forum. Defendants read too much into this statutory provision. "A plain reading of the statute's language indicates that the rule is designed to prohibit waiver of the protections afforded to franchisees under the statute." *Ramada Worldwide, supra*, 2013 WL 5773085 at *3. *See also Long John Silvers, Inc. v. Nickleson*, 923 F. Supp. 2d 1004, 1010 (W.D. Ky. 2013) ("The MFA's anti-waiver provision simply operates to prohibit the franchising contract from abrogating or contradicting rights afforded to Minnesota franchisees under the MFA.")

*Cf., Hoodz Intern., LLC v. Toschiaddi*, 2012 WL 883912 (E.D. Mich. Mar. 14, 2012) (construing similar anti-waiver provision in California Franchise Relations Act and holding that that section of the CFRA "does not guarantee franchisees that they will litigate disputes in California; it merely ensures they will have the opportunity to do so." *Id.* at * 5 (quoting *Big O Tires, LLC v. Felix Bros, Inc.*, 724 F. Supp. 2d 1107, 1114 (D. Colo. 2010)).

The rights afforded Minnesota franchisees are set forth in §§ 80C.02 through 80C.22 of the MFA.[4] These sections pertain to registration requirements (§ 80C.02); exemptions from those requirements (80C.03); registration application procedures (80C.04-05); requirements of public offering statements (80C.06); filing requirements (80C.07-10); materials submitted with offers for sale (80C.11); denial, suspension or revocation of registrations (80C.12); prohibited practices and unfair practices (80C.13-14); civil and criminal penalties (80C.16-17);administrative pronouncements (80C.18); scope of §§ 01-22 (80C.19); service of process (80C.20); void waivers (80C.21); and duties of the commissioner of commerce (80C.22).

The only remotely relevant section here is § 80C.14 pertaining to "unfair practices," which provides:

> No person, whether by means of a term or condition of a franchise or otherwise, shall engage in any unfair or inequitable practice in contravention of such rules as the commissioner may adopt defining as to franchises the words "unfair" and "inequitable."

---

[4] Section 80C.01 provides definitions for all terms used in sections 02 through 22.

Minn. Stat. § 80C.14.

Defendants do not, however, argue that commencing litigation outside Minnesota is an unfair or inequitable practice, and nothing in the cited provisions of the MFA so provide. Instead, Defendants rely upon Minnesota Rule 2860.4400, promulgated by the commissioner pursuant to 80C.14, which provides, in relevant part, that

> It shall be unfair and inequitable for any person to:
>
> * * *
>
> J. require a franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes; provided that this part shall not bar an exclusive arbitration clause.

Minn. R. 2960.4400(J).

Defendants make the same argument based on this rule that they made based on Section 80C.21 -- i.e., that by filing suit in this Court Plaintiffs, in effect, have required them to waive their "rights to any procedure, forum or remedies provided for by the laws of [Minnesota]." However, nothing in the choice of forum provision in any way diminishes Defendants' right to avail themselves of Minnesota laws. A choice of forum is *not* tantamount to a choice of law. *See Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 2001 WL 967606 at \*3 (W.D.N.Y. 2001) ("A choice-of-law clause and a forum selection clause are not the same, and address different needs and concerns.")

> The choice-of-law clause does not address the court or courts in which the law is to be applied, and the forum selection clause does not address the

9

> law the chosen forum is to apply when the chosen forum . . . hears the case. Among many other things, the former goes much more to the parties' substantive rights, and the latter goes much more to the parties' litigation needs, and in particular, the place where, and procedures under which, their substantive rights are determined.

*Id.* (quoting *In re Lois/USA, Inc.*, 264 B.R. 69, 101 (Bankr. S.D.N.Y. 2001).

In sum, construing the language of the forum selection clause in its entirety, the Court finds that the forum selection clause designating venue in Michigan is proper and valid since it does not operate as a waiver of Defendants' rights under the Minnesota Franchise Act.

The decision in *Atlantic Marine* now provides the analytical framework a court should employ when a valid and enforceable forum selection clause exists between the parties and one party moves to transfer venue pursuant to 28 U.S.C. § 1404(a). Since considerations of private factors such as convenience of the parties and their friendly witnesses automatically weigh in favor of the preselected forum, as the Supreme Court directed in *Atlantic Marine,* the court should only consider the public interest factors in deciding Defendants' motion. *Atlantic Marine*, 134 S.Ct. at 583. Although aware of the *Atlantic Marine* holding and its bearing upon a motion for transfer of venue under Section 1404(a), Defendants failed to advance any public interest factors or any other relevant 1404(a) factors supporting the transfer of the case to Minnesota. Defendants bear the burden of showing that public-interest factors overwhelmingly favor a transfer of venue. *Id*.

Defendants' likely argument, although solely hypothetical since it was never raised, that Minnesota would have been a more appropriate forum given the familiarity of Minnesota federal judges with litigation involving franchises operating in Minnesota, would have been easily refuted. Two of the counts of the Plaintiffs' complaint allege federal claims for violation of the Lanham Act with which federal judges in Michigan are just as familiar as their colleagues in District of Minnesota. The other two counts assert common law claims of breach of contract law. The Court knows of no exceptional features that would render it impossible of difficult for judges sitting in the Eastern District of Michigan to apply Minnesota law in deciding these common law claims. Therefore, the Court declines Defendants' invitation to transfer this case to the U.S. District Court for the District of Minnesota.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion to Transfer Venue **[Dkt. # 26]** is DENIED.

SO ORDERED.              s/Gerald E. Rosen
                         Chief Judge, United States District Court

Dated: April 24, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 24, 2014, by electronic and/or ordinary mail.

                         s/Julie Owens
                         Case Manager, (313) 234-5135